IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ENRIQUE ACEVEDO-FELICIANO<br>CARLOS CONCEPCION-CHAPARRO<br>EILEEN B. SANCHEZ-FELICIANO<br>JOSE A. MENDEZ-VALLE<br>ANGEL CASTRO-GONZALEZ<br>MIGUEL A. CORTES-ROMAN<br>WILLIAM ROSA-FIGUEROA<br>MIGUEL TORRES-PEREZ<br>EDWIN ACEVEDO-ACEVEDO<br>RAUL PANETO-TORO<br>GILBERTO VARGAS-RIOS<br>AMILCAR MUÑIZ-ROSADO<br>ADELAIDA ROSARIO-GALLOZA<br>ANGEL L. JIMENEZ-ACEVEDO<br>EDWIN VILLARRUBIA-SOTO<br>JOSE VILLANUEVA-RODRIGUEZ<br>JOSE A. CUEVAS HERANNDEZ<br>ELBA I. QUINTANA-ROMAN<br>RAMONITA ACEVEDO-MUÑOZ<br>PABLO VILLANUEVA-RUIZ<br>THUAILA MUÑIZ-SANTONI<br>GLORIVEE SUREZ<br>ANIBAL MENDEZ-ACEVEDO<br>SANTIAGO HERNANDEZ-RUIZ<br>RAMONITA RODRIGUEZ-VARELA<br><br>Plaintiffs<br><br>vs<br><br>MIGUEL A. RUIZ-HERNANDEZ, in his<br>official capacity as Mayor of the Municipality<br>of Aguada and in his personal capacity;<br>GLENDA L. PEÑA-MUÑOZ, in her official<br>capacity as the Municipality of Aguada's<br>Human Resources Director and her<br>personal capacity;<br>ANIBAL MENDOZA, in his official capacity<br>as the Municipality of Aguada's Public<br>Works Director and his personal capacity;<br>MUNICIPALITY OF AGUADA<br><br>Defendants<br><br>vs<br><br>JULIO CESAR ROMAN<br><br>Third-Party Defendant | CIVIL 01-1445CCC |

CIVIL 01-1445CCC                                2

## STATEMENT OF REASONS FOR SUMMARY JUDGMENT

On September 28, 2007, the Court issued an Order (docket entry 399) ruling on the pending cross-motions for summary judgment on the due process issue filed by the parties on November 20, 2006 (docket entries 325 & 326). The decision was based on the testimonial and documentary evidence submitted during the evidentiary hearing held on August 9, 10, 13 and 14, 2007 and the post-hearing briefs. Plaintiffs' motion for summary judgment was granted while defendants' was denied, without statement of reasons at the time. The Court now sets forth its analysis, findings of fact and conclusions of law on the summary disposition of the only pending matter, plaintiffs' due process claim. The relevant procedural events are the granting of defendants' Fed.R.Civ.P. 50 motion for judgment as a matter of law on the procedural due process claim, the jury verdict for defendants on the First Amendment claim, the judgment of the Court of Appeals vacating the judgment on the procedural due process claim and remanding for further proceedings consistent with its opinion. The judgment that was vacated was issued on June 12, 2003 (docket entry 182) pursuant to an Order issued on that same date (docket entry 181).

The Court of Appeals made reference in its decision to its understanding of this Court's Fed.R.Civ.P. 50 ruling dismissing plaintiffs' procedural due process claims. We quote from the Opinion in this respect:

> As we understand the ruling, the district court determined that either the Law 52 contract or municipal law required that each plaintiff's hiring contract be read to include the implicit condition that the term of employment was conditioned on the Municipality's receipt of Law 52 funding.

Acevedo-Feliciano v. Ruiz-Hernández, 447 F.3d 115, 121-122 (1st Cir. 2006).

> We understand the district court to have ruled as a matter of law that Law 52, by its terms, prohibits the extension of Law 52-funded jobs using municipal funds. But the law itself contains no such prohibition. ... The statute does not support the district court's conclusion.
> Nothing in the terms of the Law 52 contract between the Commonwealth and the Municipality adds such a prohibition. It is true that the Law 52 contract was effective only "until December 31, 2000," that it listed the "number of months"

CIVIL 01-1445CCC                              3

> per worker as six, and that it required that the Law 52 funds be held in a separate account and that no expenditures be made from that account beyond the sum in the grant.  But none of these provisions forbids, expressly or impliedly, the use of other funds to fill out a contract as to which Law 52 funds had been exhausted.

Id., at pp. 122-123.

> The district court's opinion also appears to say that under municipal law, the Mayor was forbidden from creating jobs (or extending the duration of jobs) unless he had secured, in advance, all of the necessary funds.  It may be that under Puerto Rican municipal law the Mayor was acting ultra vires, as the district court found.  But at this stage we cannot resolve the question.  The district court did not explain why the Mayor's actions should be deemed ultra vires.  While the Mayor could not expend more Law 52 monies than he had available, there is no explanation so far as to why the Municipality was precluded from using other sources of funds to meet the commitment to the plaintiffs.

Id., at p. 123.

Having stated the reasons for its disagreement with what it understood the district court determined and having expressed that "[a]bsent clarity on these issues of Puerto Rican municipal law, the best course is to vacate and remand," id., the Court of Appeals opined that a new trial on the procedural due process issue might not be necessary since the legal question could be susceptible to resolution, in whole or in part, via summary disposition. Twice in its Opinion it defined the issue as follows:  "The question is whether a job that began as Law 52 employment may be continued, using municipal funds, after the Law 52 funding expires," id. at n. 7, p. 122, and "[w]hat we have been discussing is whether Puerto Rican law supplies any sort of property interest once the Law 52 funding ceased."  Id., at p. 124.

This Court ordered the parties to file cross-motions for summary judgment and scheduled an evidentiary hearing.  Plaintiffs were required to present the testimonies of the financial directors under the New Progressive Party (NPP) Mayor Julio César Román administration that hired them and under the Popular Democratic Party (PDP) Mayor Miguel Ruiz-Hernández administration that terminated them, in addition to any other evidence. Having heard the testimony of the witnesses and having considered the documentary

CIVIL 01-1445CCC                              4

evidence presented during the post-trial evidentiary hearing on the summary judgment motions and the parties' written memoranda, the Court finds that the following material facts are undisputed.

Plaintiffs were hired by the Municipality of Aguada pursuant to a one-year employment contract which ended on June 30, 2001. Their salaries for the first six (6) months were paid from Law 52 funds, a special financial grant available under a program established by the Commonwealth of Puerto Rico to ameliorate unemployment. See 29 L.P.R.A. §711(c). Their Law 52 contracts were funded by the Commonwealth of Puerto Rico through December 31, 2000, six months before the June 30, 2001 termination date established by NPP Mayor Román in the hiring letters.

Defendant Miguel Ruiz-Hernández from the PDP won the November 7, 2000 elections in Aguada and was sworn into office on January 9, 2001, after the funding for plaintiffs' Law 52 contracts had expired. Plaintiffs continued to be paid their salaries through the month of January 2001 by the Municipality utilizing municipal funds.

The new Mayor sent on January 31, 2001, to all of the plaintiffs termination letters informing that their Law 52 work contracts had expired on December 31, 2000 and that the Law 52 funding had ceased. None of the plaintiffs were granted a pre-termination hearing.

Despite the cessation of the Law 52 grant as of December 30, 2000, the Municipality of Aguada had available the use of municipal funds to pay the plaintiffs' salaries for the remaining five months of their one-year employment contract. Therefore, their jobs, which began as specially-funded Law 52 employment, could be continued through June 30, 2001 since the Municipality could assume financial responsibility by paying plaintiffs' salaries with its funds after the Law 52 funds had been exhausted. Defendants knew this since the second half of Fiscal Year 2000-20001 which is the relevant timeframe.

Defendant's argument that "as of January 31, 2001 there was no identifiable source of funds at the Municipality for responsibly committing to pay an additional five months of

CIVIL 01-1445CCC                              5

salaries"[1] is defeated by objective financial data on record.  As of September 5, 2000, when Resolution No. 22 was issued (Exhibit 6 for plaintiffs), there was a $424,000.00 surplus derived from the cash on hand available corresponding to Fiscal Year 1998-1999, after deductions.  As of June 30, 2000, the Municipality had an available surplus of $965,464.00, as shown in its Ordinance No. 44 dated June 30, 2000 (Exhibit 1 for plaintiffs).  The $965,464.00 surplus corresponds to the cash on hand available at the end of Fiscal Year 1999-2000, which immediately preceded the fiscal year corresponding to plaintiffs' contracts. Such surplus had been confirmed by an external audit conducted in November 2000.  This audit was done before the external audit of the Municipality prepared on December 19, 2001 (Exhibit 4 for plaintiffs), six months after expiration of Fiscal Year 2000-2001.

Such data clearly reflects that neither the Municipality nor its Mayor had to await for the December 2001 audit, as averred by defendants, to decide whether there was enough cash on hand as of February 2001 to pay $167,000.00, the approximate sum equivalent to the salaries of all plaintiffs for the following five months.  Defendants' contention that the December 2001 external audit serves to corroborate their theory since the final amount of the surplus reported therein was reduced to $186,038.00 ignores the fact that, as of the second half of Fiscal Year 2000-2001, it had a surplus that had accumulated from past fiscal years.  This is supported by the available objective data corresponding to Fiscal Years 1998-1999 and 1999-2000 that, as of November 2000, had already been scrutinized by external auditors of the Municipality.  The surplus available, as shown in Exhibits 1 and 6, was derived from an excess of revenues and other financing sources over expenditures in Fiscal Years 1998-1999 and 1999-2000.  Such surplus could have been used to pay for the remaining five months of plaintiffs' one-year service contracts, just as they chose to use it for other needs.

_____

[1]  Memorandum of Law in Support of Defendants' Contention on the Due Process Claim (docket entry 394), at p. 9

CIVIL 01-1445CCC                              6

        The clearest indicator that there was a surplus fund available to defendant Ruiz-
Hernández' administration for this purpose is plaintiffs' Exhibit 1, Ordinance No. 44, which
provides for a readjustment of $100,000.00 with surplus cash on hand as of June 30, 2000,
for the purpose of increasing the existing credit within the waste disposal account of the
budget.  This ordinance was issued and approved on June 4, 2001 by the Municipal
Assembly and June 6, 2001 by defendant Mayor Ruiz-Hernández pursuant to Article 7.009
of the Autonomous Municipalities Act, 21 L.P.R.A. §4309 which identifies "the surplus
remaining as cash on hand as of June 30 of each year, after the budget is closed and the
debts chargeable to said balance have been met," as  one of the sources of readjustment
to the general budget.  The readjustment authorized by Ordinance No. 44 on June 4 and 6,
20001 was possible because as the second Whereas of such Ordinance reads, the Finance
Director certified to the Municipal Assembly that the Municipality had determined a surplus
remaining as cash on hand as of June 30, 2000 after the budget was closed and the debts
chargeable to said balance were met.  Given the known, objective financial data, Mayor Ruiz
did not need a crystal ball, as claimed, to have destined, by readjustments, the amount
necessary to cover plaintiffs' salaries on the remaining five months of their one-year contract
just as he did not need the powers of a clairvoyant to approve the $100,000.00 adjustment
during that same fiscal year to address other Municipality needs.

        As stated before, there is no dispute that plaintiffs' one-year contracts of employment
with the Municipality could have been continued, after expiration of the Law 52 funds, using
municipal funds as authorized by §4309 of the Autonomous Municipalities Act.  Accordingly,
plaintiffs had a reasonable expectation that they would continue to be employed by the
Municipality until completion of their one-year contracts.  They have, therefore, shown a
property interest under Puerto Rican law.  Cf. Acevedo-Feliciano v. Ruiz-Hernández, 447

CIVIL 01-1445CCC                              7

F.3d at 121 ("Under our case law a one-year contract of employment with a Puerto Rico government body usually suffices to show a property interest sufficient under Commonwealth law.")

Whether defendants' property interest in their one-year employment contracts under Puerto Rico law rises to the level of a legitimate claim of entitlement that would serve to set off the protections of procedural due process under federal constitutional law is a settled question, as it has been repeatedly established that a property interest in continued employment constitutes a legitimate claim of entitlement sufficient to trigger procedural due process requirements.  See Goss v. López, 419 U.S. 565, 573, 95 S.Ct. 729 (1975); Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772 (1971); Wieman v. Updegraff, 344 U.S. 183, 191-192, 73 S.Ct. 215, (1952); Arnett v. Kennedy, 416 U.S. 134, 164, 94 S.Ct. 1633, 1649 (Powell, J., concurring); 171, 94 S.Ct. 1652 (White, J., concurring and dissenting).

Finally, while the Court of Appeals in its Opinion also noted that it was an open question whether existing state remedies were adequate making a passing reference to Lujan v. G&G Fire Sprinklers, Inc., 532 U.S. 189 (2001), we find that such an inquiry is unnecessary given the facts of this case.  In Lujan, the Supreme Court held that the availability of a breach of contract action under state law provided constitutional due process to a party who was deprived of payment by the state under a contract where the state maintained that the party had failed to comply with the contract terms and the party claimed it had complied.  Lujan, however, explicitly distinguished its facts from cases where the plaintiffs had established that they were "presently entitled" to pursue gainful employment, as is the situation in the case at bar.  See Baird v. Board of Educ. for Warren Community Unit School Dist. No. 205, 389 F.3d 685, 691 (7th Cir. 2004).  In any event, even assuming that the holding of Lujan were applicable to the facts of this case, defendants have failed to show that there were existing post-termination remedies offered by the Municipality which would have adequately addressed plaintiffs' due process rights.

CIVIL 01-1445CCC                                  8

Thus, plaintiffs were entitled to due process before being terminated, which "typically includes 'some kind of hearing' and 'some pretermination opportunity to respond.'" Acevedo-Feliciano v. Ruiz-Hernández, 447 F.3d at 121 (quoting Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).  But, as observed by the Court of Appeals, "none of the plaintiffs were granted a pre-termination hearing." Id., at p. 118-119.  Accordingly, their constitutional right to due process of law was infringed by defendants, and for that reason plaintiffs' Motion for Summary Judgment (docket entry 325) was granted on September 28, 2007 (docket entry 399) and summary judgment is now hereby issued in their favor on that claim.

**A settlement conference will be held on December 18, 2007 at 4:45 P.M.  If the case is not settled, the trial on the damages resulting from the infringement of plaintiffs' due process rights will be held on February 28, 2008 at 10:00 A.M.**

SO ORDERED.

At San Juan, Puerto Rico, on November 27, 2007.

S/CARMEN CONSUELO CEREZO
United States District Judge